Daus v. Daus, 179 Wis. 310.

---

•Daus and others, Appellants, vs. Daus and another, Respondents.

*December 6, 1922—January 9, 1923.*

*Deeds: Delivery in escrow: Evidence:.Sufficiency.*

In an action to set aside a deed given in 1911 by an elderly woman to two of her daughters who had always lived with her, helped accumulate her property, and who had turned over their earnings to her, the evidence is *held* to sustain a finding that the mother had made the deed with the intention of then transferring title to the daughters and that the deed was delivered to a third person to be held in escrow until the death of the mother, when it was to be delivered to the grantees for recording.

APPEAL from a judgment of the circuit court for Winnebago county: EDGAR V. WERNER, Judge. *Affirmed.*

Action to set aside a deed from Christine Daus to *Martha Daus* and *Ida Daus,* conveying to them lot 6, block 66, in the Sixth ward of the city of Oshkosh, Winnebago county. The complaint charges that *Herman Daus, Augusta Blank, Anna Robinson,* and *William Daus,* the plaintiffs, and *Martha Daus* and *Ida Daus,* the defendants, are the only heirs at law of Christine Daus, deceased, who died intestate at Oshkosh, Winnebago county, on the 22d day of May, 1921; that at her death Christine Daus was the owner of the property above described; that on the 14th day of March, 1911, she executed a deed purporting to convey such property to said defendants, together with a bill of sale of certain personal property; that said deed was duly recorded in the office of the register of deeds of Winnebago county on the 28th day of May, 1921; that said defendants, after the death of Christine Daus, made claim to said real estate and such personal property; that the deed and bill of sale were deposited for safe keeping in the State Bank of Oshkosh and remained there until the spring of 1921, and thereafter were in the custody of the State Exchange Bank of Oshkosh, as successor to the State Bank of Oshkosh, until the 26th of May, 1921, when they were wrongfully delivered to the defendant *Martha Daus.* The complaint further alleges that the deed and bill of sale were fraudulently obtained by the defendants from the deceased Christine Daus and are therefore null and void. Other facts are alleged to substantiate the charges set forth. The answer alleges that the defendants are the owners of the real estate, and the personal property described in the bill of sale.

The court, in its findings of fact, found that on the 14th day of March, 1911, Christine Daus executed the deed in question to the defendants, freely and voluntarily, with the intention to transfer the title to the property described

therein to the defendants; that the deed was delivered by her to Henry Dehde, cashier of the State Bank of Oshkosh, to be held in escrow until her death, when it was to be delivered to the defendants for recording; that the title to the premises passed to the defendants upon the delivery of the deed to Dehde, and the defendants then became, and ever since have been, the owners thereof, and that the plaintiffs, or either of them, have no claim or title to such real estate. Judgment was entered accordingly.

*David C. Pinkerton* of Oshkosh, for the appellants.

For the respondents there was a brief by *Bouck, Hilton, Kluwin & Dempsey* of Oshkosh, and oral argument by *John F. Kluwin.*

CROWNHART, J.    It appears from the evidence that the parties to the action are the children of Christine Daus and Martin Daus. Martin Daus suffered an injury in 1881, causing insanity, from which he died in 1913. At the time of the injury there were six children, ranging from two to twelve years of age. Another child was born shortly after the injury. These children lived with the mother on a small homestead in Oshkosh until they were married, and all the earnings of the children were turned over to the mother. After they became of age the children remained with the mother until they were married, *Augusta* being married at the age of 28, *Herman* at the age of 30, Otto at the age of 24 (who died in 1919, leaving no children), *William* at the age of 26, and *Anna* at the age of 31. *Martha* and *Ida* remained single and lived with the mother until the time of her death. *Martha* was a dressmaker and *Ida* worked in a laundry. Both women turned their earnings over to their mother up to the time of her death.

The old house on the homestead was torn down and a new one was built about the year 1893 with money accumulated from earnings of the children. Later the lot in issue was purchased and a house built thereon by the mother in

the year 1901, the money therefor having been accumulated from the same source. As fast as the children were married they ceased to contribute to the mother.

In 1911 Christine Daus had a serious sickness, from which it was feared that she would not recover. She then sent for Dehde, cashier of the State Bank of Oshkosh, who was a confidential adviser of the family, and asked him to draw her will so as to leave the homestead property to her daughters *Martha* and *Ida*. After examining her papers Dehde told her that the title to the homestead was in the name of her husband and she could not give that property to her daughters, but that the title to the lot in question was in her name and she could give that to them if she wished. Dehde thereupon drew the deed in issue. It was properly executed and Dehde took it with him to the bank, leaving a memorandum of his custody with Christine Daus. This memorandum, called a receipt, was kept in a tin box used in common by the mother and the two daughters, *Martha* and *Ida*, until the mother's death, at which time *Martha* took it to the State Exchange Bank of Oshkosh, received the deed, and had it recorded. Dehde died in 1913, and Martin Daus died in the same year. Christine Daus recovered from her illness of 1911, and lived until May, 1921, without making any other disposition of her property.

It is the claim of the defendants that the deed in issue was delivered to the State Bank of Oshkosh in escrow, to be delivered to them upon the death of the mother. It is undisputed that at the time that Christine Daus was supposed to be fatally ill in 1911 she intended to give the property described in the deed to *Martha* and *Ida*. There were good reasons for this. The two women had not married, but had remained with the mother and helped to accumulate the property by their industry and frugality. The other daughters were married, as were her sons. Presumably they were capable of taking care of themselves. The

homestead they had helped to accumulate would descend to the children in equal parts. But *Martha* and *Ida* had made the greater sacrifices and their prospects were less hopeful. After the deed was executed and delivered Christine Daus told her friends that she had provided for *Martha* and *Ida*—she had given them the property in issue. This is not denied. Christine Daus collected the rents of the property and paid the taxes during her lifetime out of the common purse. We have no doubt about the intention of Christine Daus in executing the deed. It was her clear intention to give the property therein described to *Martha* and *Ida*. Dehde was not a lawyer, but he had considerable experience in such matters, and it may be reasonably presumed that he intended to carry out her wish in the matter. Therefore, when he took the deed with him it may be fairly presumed that he was to hold it for *Martha* and *Ida,* to be delivered at the death of the mother. Dehde died soon after, but his assistant cashier continued to keep the deed in the bank, as directed by Dehde. He did not remember clearly at the trial what Dehde's instructions were. From the evidence the trial court drew the inference that the deed was a transfer of title, and the deed was delivered in escrow, to be held for *Martha* and *Ida* until the death of the grantor, when it was to be delivered to them for recording. We agree with the court in his finding of intent on the part of Christine Daus. The question remains whether that intent was legally executed. Do the facts as found constitute a conveyance of such property by Christine Daus to *Martha* and *Ida?*

In answering these questions we must consider all the facts and circumstances. The two persons who had personal knowledge of all the facts—Christine Daus and the cashier, Herman Dehde—were dead at the time of trial. The one important fact to be determined is whether the deed was intended as an absolute transfer of title, delivered in escrow, to be held until the death of the grantor before

recording.   The testimony is fairly conclusive that Christine Daus so understood the facts to be.  For nine years the bank held the deed without Christine Daus exercising any dominion over it.   She told her friends that she had given the property described in the deed to the defendants; that she had fixed the matter so there would be no trouble over it. There was no secrecy about the making of the deed.   One of the plaintiffs, *Mrs. Robinson,* was present at the time. Her husband called the cashier Dehde to come to the house to attend to the matter, and he signed the deed as a witness. The memorandum which Dehde gave for the deed was kept in a tin box used in common by her and the defendants.   Christine Daus told *Martha* "to take care of that receipt because it would make trouble if we lost it."   On the whole evidence we think the findings of the circuit court are sustained and should be confirmed.   See *Chaudoir v. Witt,* 170 Wis. 556, 170 N. W. 932, 174 N. W. 925.

*By the Court.*—Judgment affirmed.